Shaw C. J.
drew up the opinion of the Court. [After stating the facts as before mentioned.] From this statement of facts, condensed as far as possible, from the case made by the parties, and the documents» therein referred to, the question again recurs, which of these two bodies, thus formed and organized, can best claim, in a legal sense, to be “ The Church in the Third Precinct in Brookfield,” and to have the beneficial interest and property in the church furniture in question. The defendant being in possession, will not be disturbed in that possession, unless the plaintiff can show a better legal title, and therefore the burden of proof is upon him to establish such *183 title. But as all the material facts upon which that title is founded, are agreed, and as it is manifest that the legal property is in one or the other of them, so that disaffirming the title of either, necessarily affirms the title of the other, the rule in regard to burden of proof will afford very little aid, in deciding the question.
That an adhering minority of a local or territorial parish, and not a seceding majority, constitutes the church of such parish to all civil purposes, was fully settled in the case of Baker v. Fales, 16 Mass. R. 503, and Sandwich v. Tilden there cited. This, if considered a binding authority, would be sufficient to settle this case in favor of the plaintiff. So it seems to have been considered by the counsel respectively ; and the free, able and very elaborate argument of the defendant’s counsel, consists mainly of a revision of the positions advanced, and the points decided in that case.
■ The propositions maintained by the learned counsel for the defendant are,
1. That the congregational churches of Massachusetts, regularly gathered, are, and always have been, entirely distinct from the towns, parishes and congregations, with which they have been associated in public worship : —
2. That to some extent and for some purposes, at least, they sustain a corporate character : —
3. That a church can only be dissolved by the death°of its members, its own voluntary determination to that effect, or by a forfeiture of its privileges by non-user.
Without examining these propositions in detail, it is obvious to remark, that it may be very true that churches in this Commonwealth are, and always have been, distinct from the towns, parishes and congregations, with which they are associated, and yet it by no means follows that a church, as such, in legal contemplation, can exist, except as incident to, or connected with some parish or religious society. They may be distinct, as having distinct powers and functions, distinct rights, duties and obligations, and yet cannot exist independently of the parish or congregation in which they are gathered. A familiar instance of such distinct character and functions, with such dependent existence and indissoluble connexion, is that of deacons of a *184 church, who are expressly declared to be a corporation, with succession. As such corporation, they have distinct powers and functions, and constitute an entirely distinct body from the church, by whom they are elected, and with whom they are associated. But notwithstanding they are thus distinct bodies, they cannot separate themselves-from the churches,- with which they are connected, and still claim to act as corporate bodies. By the very act of secession, they would cease to be deacons of such church, and thereby cease to possess the character in which alone their power to act as a corporation subsisted, and these powers vest in their successors. It follows, therefore, we think, that though distinct bodies, they are incident to, and indissolubly connected with the churches from which they emanate.
This analogy, we think, will be more obvious, by considering what the nature of a congregational church is, as gathered and constituted in the various towns, parishes and religious societies of Massachusetts. The church is composed of those persons, being members of such parish or religious society, who unite, themselves together for the purpose of celebrating the Lord’s Supper. They may avail themselves of their union and association, for other purposes of mutual support and edification in piety and morality, or otherwise, according to such terms of church covenant, as they may think it expedient to adopt. But such other purposes are not essential to their existence and character as a church. Such is the genera] definition of a church. Perhaps the churches in colleges may be considered as exceptions ; these cases, however, are few and anomalous, and can hardly affect the general rule. But even there, the college itself would probably be considered as giving locality and identity to such church. Suppose a majority of the church of Harvard College, dissatisfied with the theological instruction given them, or for other causes satisfac tory to their own consciences, should determine to remove with their officers, the|r records and their furniture, to Amherst College, for instance, would they and their successors still claim to be the church of Harvard College, and would the property, before given, or which might at all times thereafter *185 be given to the church of Harvard College, vest in the body thus transferred to Amherst and their successors ?
Possibly other exceptions may be imagined, as associations of pious persons, formed in remote and unincorporated settlements, for the purpose of celebrating the Christian ordinances. Such an association, perhaps, might, to many purposes, be denominated a church. Such cases would not affect the general question. It would be sufficient for the purposes of the present inquiry, to consider the description of a-church here given, as applying to a local or territorial parish ; but we can see no reason why it should not apply to all cases of churches gathered in and associated with a poll parish, or other organized religious society.
To this view of a church, as necessarily incident to, and connected with some congregation or religious society, it may perhaps be objected, that in order to the existence of an association of Christians, united for the celebration of Christian ordinances, and the enjoyment of Christian privileges, it presupposes the necessity of a union with persons, not entitled to participate in such celebration, or to enjoy these privileges, which would be incongruous. But we think there is no substantial ground for this objection. A congregation may be imagined, every individual of which may be a church member. In this case, the same body of individuals would possess two distinct capacities, having certain rights, duties and obligations in each. This is no anomaly in the law. It is strictly analogous to the case of a town acting at the same time as a town and a parish, of which there are, or recently were, hundreds of instances in the Commonwealth. In that case, one corporate organization is commonly used for both these purposes. The town settles a minister and makes other contracts of a parochial nature; it also establishes schools, engages instructors, and makes contracts in regard to other municipal objects. It also purchases and receives grants, donations, and conveyances of property, real and personal, some expressed to be for the support of a minister, and others for the support of schools, all of which are, or may be, held and managed under one corporate organization, and by one set of officers. Afterwards, a part of su< h town is set off into a distinct territorial or poll parish, and *186 the remainder of the town, by law, becomes a parish. Here it *s man*festi that as all those who compose the town, no longer compose the parish, the two capacities can no longer subsist together in the same body, and a distinct organization becomes necessary. But there is no difficulty in recognizing these two distinct capacities, whilst they subsisted together. For, after the separation, all those rights, duties and obligations, which belonged to the town in its parochial character, devolve upon that portion of its inhabitants, who by operation of law become successors to the town in that capacity ; whilst all those which belonged to the town in its municipal character, continue so to belong, notwithstanding the erection of a new parish. And it may be remarked in passing, that this is equally the case, where the persons, who are formed into one or several new parishes, constitute a great majority of the inhabitants of the town. Those who become the successors of the town in its parochial capacity, succeed to the whole of its parochial rights, although they constitute but a small minority of its inhabitants.
So with regard to the church and congregation, they may be, though they rarely are, composed of the same individuals ; in which case the same body may be regarded in two distinct capacities. To illustrate this, suppose ten young married men procure from the government the grant of a township of land, and settle upon it, get incorporated as a town, and settle a minister, all with their wives being members of the church in full communion. Here the town, parish and church are all composed of the same individuals. They are, however, to be regarded as three distinct bodies, for different purposes known to the law, or, what is in effect the same thing, a body with three distinct capacities. In this state of things, property is given to this body, by any designation sufficient to identify it, by one person to procure a service of church plate, by another to support a teacher of piety, religion and morality, and by another to support a school. The year after, several persons move into this town, become proprietors of lands and houses, by purchase and lease, and as such, settled inhabitants, but who are not church members. They attend public worship, and are assessed for their polls and estates, to the parish tax. Here the distinction, between church and parish, which all *187 along existed in contemplation of law, becomes manifest and takes effect in practice. Those only who are church members, will constitute the church ; and all property that had been given to the original body, which by the express terms of thd grant was limited to the use, or given in trust for the church, or which, from its nature, the law will presume to have been so intended, vests defacto in those, who, by law, are constituted a corporation to take property for the use and benefit of the church. In the case supposed, the service of plate, whether given to the church or parish, or by whatever designation, as it could only have been designed to be used in the celebration of the Christian ordinances, would by law vest in the deacons, the law implying from the nature of the property, that such was the tru'st intended by the donor. All the other property would remain vested in the town, in its municipal or parochial capacity. Again should a part of the inhabitants be incorporated into a parish, the remainder, whether a majority or minority of the whole, would become a parish ; and here the distinction of capacities, into municipal and parochial, which had before existed, would take effect in practice. That portion of properly which had been given to the town for the support of public worship, or from its nature was obviously adapted to that purpose, would be deemed to have vested in the town in its parochial capacity, and would vest in the parish, becoming its successor ; whilst that given to the same town by the same name, for the support of schools, being for a municipal purpose, would be deemed to have vested in the town 'in its municipal capacity, and so would remain vested in the town, notwithstanding the change in its parochial character. This familiar instance may serve to illustrate the point, that there is no incongruity in saying that a religious society and a church are, to many purposes, distinct bodies, associated for distinct purposes, and having distinct rights, and yet may be composed of the same individuals. When thus composed, which case rarely happens in fact, though these distinctions may exist only ■n contemplation of law, they are nevertheless plain and real ; but when one or more individuals are members of the society, but not of the church, the distinction becomes practical, and relates back to all grants, contracts and other acts done, and *188 rights acquired, when the same individuals were associated in different capacities.
From these views, it seems evident, that the identity of a congregational church, used in the sense already explained, must be considered as depending upon the identity of the parish or religious society, with which it is connected. In this view, its identity may or may not depend upon locality. If the religious society, with which it is connected, may change its place of meeting and worship, without affecting its identity, as most societies may, at least within certain limits, the same change might take place in regard to the church, and yet it would continue the same church. Whether a poll parish or religious society might be incorporated, without any local designation, or any provision, express or implied, giving it a local character, to consist of certain individuals named, and such associates as they might receive, and might at their election remove from one place to another within the Commonwealth, it is not now necessary to inquire. It is sufficient for the purposes of the present inquiry to say, that when a parish or religious society is, by its constitution, limited to any place, the church of such society, by whatever terms designated, is equally limited, being necessarily associated and indissolubly con nected with such religious society, and incapable of subsisting independently of it.
But it is insisted that churches, to some extent and for some purposes at least, sustain a corporate character ; that as corporations, they have perpetual succession, and therefore that they can subsist and act without dependence on, or connexion with, any religious society, or other body whatever. It may be proper briefly to consider the soundness of this position, and the correctness of the conclusion drawn from it.
Using the term corporation ” in a loose sense, and without technical exactness, it may be true that these bodies, to some extent and for some purposes, have a corporate character. The same may be said of all the various associations and voluntary societies formed in the community, for any charitable, useful or innocent object. They are known and designated by a collective name, may hold meetings, elect officers, pass votes, raise money by voluntary assessment, and direct its disburse *189 ment. The individuals composing it, may bind themselves, by mutual engagement, to the performance of particular duties and obligations, which are valid in law. They may therefore be said to perform some of the functions, and possess some of the characteristics of corporations. But to be of any avail in the argument, it must be shown that churches are corporations, or possess corporate powers, known to the law, at least to the extent of enabling them to have an independent existence and perpetual succession, and to hold and exercise some control over property. And to this extent the proposition goes in the argument, in this case.
It is a principle of law, which has been often acted upon, that where rights, privileges and powers are granted by law to a body of persons, by a collective name, and there is no mode by which such rights can be enjoyed, or powers exercised, without acting in a corporate capacity, such bodies are deemed by necessary implication, to be so far corporations, as to enable them to enjoy and exercise the rights and powers thus granted. So when a duty or obligation is imposed ; for where the law gives a remedy against an aggregate body, it gives a right of action, and to that extent constitutes them a corporation by implication. In Russell v. The Men of Devon, 2 T. R. 672, this principle was recognized by Lord Kenyon, and applied to the case of an action against the hundred, on the statute of hue and cry. But to found this argument, it must appear that the rights and powers conferred, can only be enjoyed by the exercise of corporate powers, and therefore if such powers are not necessary, they are not given by implication.
The power given to churches, by some of the colonial and provincial laws, to act and vote in the choice of a minister, either exclusively or concurrently with the society, required, whilst it existed, nothing more than that there should be a church in each religious society, duly organized, and perpetuated ; besides, this power has been expressly abrogated by the constitution. The importance given to church membership, by making it a necessary legal qualification for civil and political office, conferred no power on the church, to be exercised in its aggregate capacity. The power of electing members, with a view to a perpetual succession, of choosing deacons, *190 committees and other officers, of maintaining ecclesiastical discipline and celebrating Christian ordinances, does not confer corporate powers by legal implication, within the principles stated, if those privileges can be fully enjoyed and exercised without the exertion of such corporate powers.
It is conceded that in early times neither legislation nor jurisprudence were exact upon this, or any other subject. Churches were respected for their piety and utility, their rights were recognized and acquiesced in by general consent, without being defined or secured by law. But when they became numerous, and the property incident to their beneficial operation, considerable, an express legal provision was made, by the act of 1754, enacting, that the deacons, for the time being, should be a body corporate, with power to take and hold property, for the use of the church, and to transmit it to their successors for the like purpose ; which law has ever since been in force. No implied corporate powers therefore are necessary to enable the church to hold property, because by this statute, express provision is made for the taking, holding and transmission of property, in which the church is beneficially interested. The statute provides, that all property given to the church, shall vest in the deacons and their successors as a corporation, and the maxim applies, expressio unius exclusio est alterius. As two persons or corporations cannot legally hold the same property at the same time, the law which provides that it shall vest in one, by necessary implication declares that it cannot vest in the other. The statute was professedly made for the better recovering of grants and donations to pious and charitable uses, for the better support and maintenance of ministers, and defraying charges relating to public worship. Two objects were to be accomplished by the statute ; one, to give all such grants a legal effect and operation, by enabling the grantees to take and hold real and personal property ; the other, that such property should go in succession. But both of these objects would have been as effectually accomplished without the statute, had the churches been deemed corporations, or qua corporations, with power to take and hold property to them and their successors, and so the statute would have been unnecessary and nugatory. This is a legislative exposition of *191 the law, and the implication from it is inevitable, that tip to 1754 churches were not deemed corporations capable in law of taking and holding property ; and since that time they cannot be taken to have such corporate powers by implication, not only because such powers are not necessary to enable them to enjoy all their rights, but because the statute, by vesting all property given to them in another body for their use, has effectually rendered them legally incapable of either taking or hold"ng property. This statute, therefore, which was passed about he middle of the last century, and which was revised and substantially reenacted soon after the adoption of the constitution, and which is of the highest authority upon this subject, so far from proving that churches are corporations empowered to hold property, appears to us to prove the contrary.
If then the question is asked, how, if churches are not corporations, can they preserve their own perpetual succession, and elect deacons, who shall constitute a corporation, with perpetual succession, and invested with acknowledged, legal, corporate powers, it appears to us, that it is not of difficult solution. If a church is rightly described as an association of all, or part of the members of a religious society, and united for the celebration of Christian ordinances, it is necessarily incident to, and inseparably connected with such parish or religious society, which is a corporation with perpetual succession, and the perpetual existence and identity of the church is ascertained and identified by such corporation. Even should every member of an existing church die or remove, it would be competent for other members of the parish or religious society to associate themselves for the purpose of celebrating the Christian ordinances, or, in the language of the early days of New England, to gather a church, and such associated body would possess all the powers and privileges of the "church of such parish, and would be the legitimate successors of the former church, to the same extent as if no suspension or interruption in the regular succession and continuity of the body had taken place. Such a body would have the power of electing deacons, and when elected, by force of the statute, all property, real and personal, which had been held by their predecessors, or given to the church, would vest in such deacons. The same consideration *192 therefore applies to this, as to a former view of the subject, that corporate powers are not attributable to churches by implication from the supposed necessary existence of those powers, in order to maintain a perpetual succession of deacons, because by the corporate character and powers of the religious societies to which such churches are incident, the perpetual succession of deacons can be preserved.
The same consideration applies to the power of a church to choose a committee in certain cases, to sue. The corporate character of the religious society ascertains the church, the election of this body constitutes the committee, and the power to sue vests in the committee by force of the statute.
It appears to us, therefore, that all the considerations urged' in argument, fail to establish the position, that churches, in any legal sense, possess the character and powers of corporations. But were it otherwise, were it proved ever so clearly, that to some purposes churches are corporations, with power to bold property, it would tend very little to establish the conclusion, that therefore they may secede from the religious societies in which they are formed, and be capable of subsisting and acting, without dependence on or connexion with such societies. It is easy to imagine the case of an incorporated institution, with incidental and subordinate corporations depending upon and connected with it. Such is the case of an incorporated university. Different trustees, professors and other officers might be vested with corporate powers, for the management of particular professorships, charities and schools, connected with such university. Could they, because possessing corporate „ powers, remove these charities, schools and professorships to another university, or conduct them as independent establishments ? So in a city, the overseers of the poor, the aider-men, the fire department, and the school committee, for the time being, may severally be incorporated, for particular purposes, but incident to, and subordinate to the incorporation of the city. Ceasing to hold these offices, and to be connected with that corporation, they would cease to be corporations, and could not subsist and act independently.
But it is impossible to imagine a case more strongly illustrative of this point, than one arising immediately out of the sub *193 ject before us, and already referred to. Deacons of churches, by statute, are made corporations, with all the legal powers and qualifications of corporations, capable of taking and holding property, in succession, and of suing and being sued. Both the parties in this suit are such corporations, suing and defending in that character, and without it would have no standing in court. But can it be imagined that deacons could separate themselves from the churches by which they are chosen, and, as corporations, subsist and act independently of them ? How then could it be concluded, if churches were corporations, that in consequence of holding that character they could subsist and act independently of the parishes and religious societies in which they are formed ?
It is quite probable that some confusion may have arisen on this subject, from not sufficiently considering the precise distinction between a church.and a religious society. The latter, being qualified to provide for the support of public worship, and the maintenance of religious teachers, is invested with all vhe powers pf an independent body politic, which are necessary and proper to enable them to accomplish those objects ; whilst a church has no power and no occasion to provide for those objects, or to make any contract in relation to them. If, then, it is asked whether, if a church be dissatisfied with the doctrines taught, and the instructions given, in the parish in which it is formed, they cannot withdraw, the answer appears to us to be obvious ; that the organization of a church in any parish is designed for the edification and benefit of those members who choose to unite in it, and if those members, be they few, many or all, can no longer conscientiously attend there, they may unquestionably withdraw and provide for the' institution of public worship elsewhere. But this they necessarily do in another and distinct capacity,—that of a religious society. They may also form a church, but it will be the church of the society thus established, and not the church of the society from which they have withdrawn. Otherwise, the anomaly would be presented, of a society competent to settle a minister, and to support public worship, and yet incapable of having a church, or celebrating the Christian ordinances ; for it is impossible that there should be two distinct bodies, having no *194 communication with each other, organized under different officers, and keeping distinct records, which should each be the same church, at the same time. This would be contrary to the usage, practice and general understanding of the Commonwealth, from the earliest times, and equally contrary to the spirit and purport of the statute ( St. 1799, c. 87,) which provides, “ that the respective churches, connected and associated in public worship with the several towns, parishes, precincts, districts and other bodies politic, being religious societies established according to law, within this Commonwealth, shall at all times have, use, exercise and enjoy all their accustomed privileges' and liberties, respecting divine worship, church order and discipline, not repugnant to the constitution of this Commonwealth, and shall be encouraged in the peaceable and regular enjoyment and practice thereof.” This statute implies the understanding of the legislature, not only that churches are bodies connected and associated with parishes and other religious corporations, but also that each of those religious societies, established according to law, shall be capable of having churches so connected and associated with them, who can at all times use and enjoy the liberties and privileges therein assured to them.
It would be equally anomalous to suppose that a religious society, established according to law, and not only capable, but bound by the constitution and laws to provide for the institution of public worship, and the support and maintenance of teachers of piety, religion and morality, should be made to depend for their decent and orderly action, upon a body who had wholly withdrawn from them and instituted public worship in another place, perhaps a distant town or State, who had not only ceased to be members, but who had formally furnished the society with legal evidence of their having so done, and who by these acts had shown, that even if they bad no adverse pr hostile interests, they had no longer any interests in common with such society, upon these subjects.
Upon a review of the subject, the Court are all of opinion, as it was substantially decided in Baker v. Fales, so far as that case involved the same point, that in whatever aspect a church, for some purposes, may be considered, it appears to be clear, *195 from tue constitution and laws of the land and from judicial decisions, that the body of communicants gathered into church order, according to established usage, in any town, precinct, or religious society, established according to law, and actually connected and associated therewith for religious purposes, for the time being, is to be regarded as the church of such society, as to all questions of property depending upon that relation.
It remains only to apply these principles to the case under consideration. It appears that at the time Mr. Stone consented to the dissolution of his connexion with the parish, he reserved the right to retain his relation as pastor of the church in that society, to which reservation the parish and the church, as far as they respectively might, assentéd. It may be admitted, without affecting this inquiry, that individuals may bind themselves by express engagements with each other, for spiritual aid and mutual edification, and that some obligations, binding in conscience, may arise therefrom. But considering a church, gathered in a religious society, in the sense in which it is used, and in which alone it can be used, in this relation, it seems to follow conclusively, from the principles already stated, that when a minister ceases to be the teacher of piety, religion and morality in such society, he ceases to be the pastor of such church. It appears to us, therefore, that the reservation in question, as to its effect upon the condition of the church, was wholly nugatory and void, and did not alter the relation of church and congregation. But were it otherwise, the consequence only would be, that Mr. Stone retained the relation of pastor to the church, as it had withdrawn and separated itself from the parish of the third precinct, and as it afterwards connected itself with the Evangelical Society. If the relation of pastor and church continued to any purpose, it was with this church, and if, for the reasons before given, this body ceased to be the church of the third precinct, the continuance of such relation or not, could have no effect upon the present question.
It appears from the facts in the case, that the defendant and those whom he represents, long before the commencement of this action, had withdrawn from all the meetings of the parish, either for business or worship, that they had formed a new *196 society under a collective name, the Evangelical Society, had applied to a magistrate to call a meeting, and thereby, and by force of the statutes of 1811 and 1823, had become incorporated as a distinct religious society, and had filed certificates with the clerk of the third precinct, and thereby wholly ceased to be members thereof; that as a church, they had voted, as far as they were capable of doing so, in that capacity, to unite with the Evangelical Society, and thus, if a church at all, had become a separate and distinct church from that of the third precinct. It further appears, that the body représented by the plaintiff is composed in part of those who were, before am division, members of the church of that parish, with others regularly chosen by them, that they are associated for the celebration of Christian ordinances, in usual church form and order, that they have been recognized as a regular church by an ecclesiastical council, and joined in the call and settlement of a minister in that parish, and therefore possess all the requisites and characteristics of the church of that parish. The plaintiff having been duly elected deacon of this church, is entitled by force of the statute to take and hold all the property, in which it is beneficially interested, including the furniture in question, and therefore is entitled to judgment in this action.[1]

 See Sawyer v. Baldwin, 11 Pick. 492; Revised Stat. c. 20, § 3.